**Walter KIRSCHENMANN et al.,
Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellee.**

**No. 72–1730.**

United States Court of Appeals,
Ninth Circuit.

Nov. 12, 1973.

Curtis Darling (argued), Darling & Maclin, Bakersfield, Cal., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Michael L. Paup, Attys. (argued), Tax Div., U. S. Dept. of Justice, Washington, D.C., Lee H. Henkel, Jr., Acting Chief Counsel, Internal Revenue Service, Washington, D.C., for respondent-appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and EAST, District Judge.*

OPINION

EUGENE A. WRIGHT, Circuit Judge:

In this case we must interpret Treasury Regulation § 1.453–4(c) (1958) to determine whether taxpayers may report their gain from the sale of a farm using the installment sale method of Int.Rev. Code § 453. The decision turns on whether the taxpayers' selling expenses are an adjustment to their basis in the property. The Tax Court, 57 T.C. 524, held that they were not and that the sale did not qualify for § 453 installment treatment. We reverse.[1]

I

Section 453 permits taxpayers to spread the gain from an installment sale of real property proportionately over the years in which payments are received rather than to recognize the entire gain in the year of sale. For the sale to

* Of the District of Oregon.

1. Jurisdiction on appeal is based on Int.Rev. Code § 7482.

qualify for installment treatment, payments received in the year of sale must comprise less than 30 percent of the selling price. Treas.Reg. § 1.453–4(c) provides that a mortgage assumed by the purchaser, to the extent that it exceeds the seller's adjusted basis, counts as a payment in the year of sale.

## II

In 1965 the taxpayers sold the farm in a transaction that is summarized thus:

| | | |
|---|---:|---:|
| (1) Cost of property to taxpayers | $304,552.22 | |
| *Minus* Depreciation claimed by taxpayers prior to sale | $206,042.86 | |
| *Equals* Taxpayers' Depreciated Basis | | $ 98,509.36 |
| (2) Commissions and other costs incurred by taxpayers in making the sale | | $ 23,378.42 |
| (3) Cash paid by purchaser | $ 80,011.54 | |
| *Plus* Mortgage on the property assumed by purchaser | $160,000.00 | |
| *Plus* Purchaser's note payable over period of years | $191,988.46 | |
| *Equals* Total selling price | | $432,000.00 |

In their 1965 and 1966 tax returns, taxpayers reported $118,123.76 as payments in the year of sale, using the computations:

| | | |
|---|---:|---:|
| (1) Taxpayers' Depreciated Basis | $ 98,509.36 | |
| *Plus* Selling costs | $ 23,378.42 | |
| *Equals* Taxpayers' Adjusted Basis | | $121,887.78 |
| (2) Mortgage Assumed by Purchaser | $160,000.00 | |
| *Minus* Taxpayers' Adjusted Basis | $121,887.78 | |
| *Equals* Excess of Assumed Mortgage over Basis | | $38,112.22 |
| (3) Excess of Assumed Mortgage over Basis | $ 38,112.22 | |
| *Plus* Cash payment | $ 80,011.54 | |
| *Equals* Payment in year of sale | | $118,123.76 |

Since $118,123.76 is less than 30 percent of the total selling price ($118,123.76/$432,000.00 = .27), taxpayers utilized the installment provisions of § 453.

The Commissioner disallowed taxpayers' inclusion of selling costs in their adjusted basis and computed the payment in the year of sale thus:

| | | |
|---|---:|---:|
| (1) Mortgage Assumed by Purchaser | $160,000.00 | |
| *Minus* Taxpayers' Adjusted Basis without selling costs | $ 98,509.36 | |
| *Equals* Excess of Assumed Mortgage over Basis | | $ 61,490.64 |

(2) Excess of Assumed Mortgage
over Basis                                    $ 61,490.64

   *Plus* Cash Payment                    $ 80,011.54

   *Equals* Payment in year of sale                                    $141,502.18

Since $141,502.18 is more than 30 percent of the selling price ($141,-502.18/$432,000.00 = .33), the Commissioner disallowed taxpayers' use of installment reporting.

The Commissioner and taxpayers agree that selling costs reduce the taxable gain from the sale. The Commissioner would offset selling costs directly against the selling price and then subtract adjusted basis (without selling costs) to compute gain:

Selling price                                 $432,000.00

*Minus* Selling costs as a direct
   offset                                     $ 23,378.42

*Minus* Adjusted basis without
   selling costs                              $ 98,509.36

*Equals* Total Taxable Gain                                        $310,112.22

Taxpayers obtain the same total taxable gain in their computations by including selling costs in their adjusted basis:

Selling price                                 $432,000.00

*Minus* Adjusted Basis including
   selling costs                              $121,887.78

*Equals* Total Taxable Gain                                        $310,112.22

---

The only difference between the two approaches is the *method* by which selling costs reduce the total taxable gain. The only tax consequence is the size of the payment in the year of sale. This affects both the taxpayers' eligibility for installment reporting under the 30 percent test of § 453 and the proportionate amount of gain that must be recognized in the year of sale.

We are left with the narrow question of whether selling costs are an adjustment to the seller's basis or a subtraction from the total selling price. We hold that they are an adjustment to the seller's basis in the property.

### III

Int. Rev. Code § 1011(a) defines "adjusted basis" as follows:

The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis [cost [2]] . . . adjusted as provided in section 1016.

§ 1016(a) provides that:

Proper adjustment in respect to the property shall in all cases be made—

(1) for expenditures, receipts, losses, or other items, *properly chargeable to capital account.* . . .
[Emphasis added.]

The Tax Court, relying on Dwight v. Ward, 20 T.C. 332, 341–342 (1953), affd. 224 F.2d 547 (9th Cir. 1955), held that selling expenses are not "properly chargeable to capital account," but rather that they are an "offset against the gross profit from the sale" as "expenditures 'made in connection with the sale of a capital asset.'" The Commissioner also cites a line of authority in support

---

2. *See* Int.Rev.Code § 1012.

of the proposition that selling costs are an "offset" against gross profit rather than an adjustment to basis as an item "properly chargeable to capital account." *See, e. g.*, Spreckels v. Commissioner of Internal Revenue, 315 U.S. 626, 629, 62 S.Ct. 777, 86 L.Ed. 1073 (1942); Godfrey v. Commissioner of Internal Revenue, 335 F.2d 82, 85–86 (6th Cir. 1964); Treas. Reg. § 1.263(a)–2(e); 4A Mertens, Law of Federal Income Taxation, § 25.26.

These authorities characterize selling expenses as an "offset" against either the selling price or the gain from the sale. The Commissioner relies on the use of the term "offset," arguing that an "offset" is a direct deduction rather than an adjustment to basis. But an offset can be effected either directly, through a direct deduction from gain, or indirectly, through an adjustment to basis. The use of the term "offset" in these authorities does not help us to decide the method by which the offset is to be accomplished.[3]

More important, none of these authorities addresses the problem now before us. They merely hold that selling expenses are not deductible against *ordinary* income but rather must be deducted from the *capital* gain with which they are associated. None of these authorities considers whether the deduction against capital gain is effected by an adjustment to basis or by a direct subtraction from the gain itself, and in none of the cases would the difference between the two approaches have had any tax consequences. Even if the term "offset" carried the implications that the Commissioner claims, it is unlikely that the authors of the authorities referred to had considered the difference between an adjustment to basis and a direct subtraction from gain. Surely, they did not have the problems of § 453 in mind when the term "offset" was selected.[4]

■ While the "offset" language of these cases does not support the Commissioner's position, their holdings do support the taxpayers' position that selling costs are an adjustment to basis as an item "properly chargeable to capital account." The rationale of these cases is that since selling expenses are capital expenses, they are not deductible from ordinary income. If we were to adopt the Commissioner's position, we would be required to hold that while selling expenses are capital expenses, they are not "properly chargeable to capital account." This would be a strained interpretation of a "capital account" under § 1016, and we decline to adopt it. As a capital expense, selling costs are "properly chargeable to capital account" and are therefore an adjustment to basis under § 1016.

IV

■ The Tax Court also relied on the fact that the taxpayers' position would permit them to fully deduct selling expenses in the year of sale rather than spread the deduction over the years in which payments are made. The Tax Court felt that such a consequence of taxpayers' position is inconsistent with Treas. Reg. § 1.453–1(b)(1) (1963) and the legislative intent of § 453.

Treas. Reg. § 1.453–1(b)(1) provides that:

> Gross profit . . . is reduced by commissions and other selling expenses for purposes of determining the

---

3. That the term "offset" is not inconsistent with an adjustment to basis is demonstrated by Great Lakes Pipe Line Co. v. United States, 352 F.Supp. 1159 (W.D.Mo.1972). Citing Spreckles v. Commissioner of Internal Revenue, *supra*, which used the term "offset," the court said:

> Generally, the costs incurred in the acquisition or disposition of a capital asset are

to be treated as capital expenditures. . . . *These costs are added to or subtracted from the basis of the assets* in computing the gain or loss realized on the sale or purchase. 352 F.Supp. at 1167–1168 (emphasis added).

4. Similarly, the language in Great Lakes Pipe Line Co. v. United States, *supra*, is dictum.

proportion of installment payments returnable as income.

This provision has the effect of spreading the deduction of selling expenses proportionately over the years in which payments are received. In upholding a predecessor of Treas. Reg. § 1.453–1(b)(1), the Board of Tax Appeals stated:

> The effect of this method of computation is that in cases where the taxpayer elects to project the profit realized into years beyond that in which the sale is made, the expenses incident to the sale are taken into account over the same period of time. This seems to us to be the result intended by law . . . . Mrs. E. A. Giffin, 19 B.T.A. 1243, 1246 (1930).

In a situation where the purchaser assumes a mortgage, the inclusion of selling expenses in adjusted basis reduced the payment in the year of sale by reducing excess of assumed mortgage over basis. Therefore, taxpayers' position permits them effectively to deduct all selling expenses in the year of sale rather than deduct them proportionately in the years payments are received as envisioned by Treas. Reg. 1.453–1(b)(1). It is incongruous that taxpayers are permitted to defer recognition of their gain while deducting immediately an expense that produced it. But the incongruity is inherent in the requirement that the excess of assumed mortgage over basis be included as a payment in the year of sale. The incongruity is not limited to the treatment of selling expenses; it pervades any item that is included in basis.[5] Since the incongruity in the case of selling expenses does not differentiate them from other items of basis, the existence of the incongruity does not provide an argument for excluding selling costs from basis.

## V

Commissioner also argues that the inclusion of selling expenses in adjusted basis would create internal inconsistencies in Treas. Regs. §§ 1.453–1(b)(1) and 1.453–4(c). Treas. Reg. § 1.453–1(b)(1) provides that

> gross profit means the selling price less the adjusted basis as defined in section 1011 . . . . Gross profit . . . is reduced by commissions and other selling expenses for the purposes of determining the proportion of installment payments returnable as income.

If selling expenses are included in adjusted basis, there is no need further to reduce gross profit by selling expenses as provided in the regulation. Our holding renders Treas. Reg. § 1.453–1(b)(1) redundant.

Our holding also creates an internal inconsistency in Treas. Reg. § 1.453–4(c). After stating that excess of as-

---

5. This can be demonstrated by the following example. In a sale of land not encumbered by a mortgage, items that are clearly elements of adjusted basis (e. g., cost minus depreciation) are not deducted fully in the year of sale. The seller's adjusted basis is accounted for proportionately over the years in which payments are made. If sellers have a $10,000 basis in the property and sell it for $100,000, payable $10,000 per year for 10 years, the seller must recognize $9,000 gain each year, reducing gain by $1,000 per year. The seller may not account for the full $10,000 adjusted basis in the first year, recognizing no gain, and then recognize a gain of $10,000 in each of the following years.

If an assumed mortgage is involved, the situation changes. If the seller has a $10,000 basis in a piece of property sold for $100,000, the purchaser assuming a $10,000 mortgage and making payments of $10,000 in years 2 through 10, the seller will recognize no gain in the year of sale and recognize a $10,000 gain in each subsequent year. If the seller's basis had been zero, the $10,000 assumed mortgage would have been recognized as gain in the year of sale. Thus, the seller effectively recoups any basis in the property in the year of sale when a mortgage exceeding basis is assumed by the purchaser.

sumed mortgage over basis is a payment in the year of sale, that section states:

> Commissions and other selling expenses paid or incurred by the vendor *shall not reduce the amount of the payments,* the total contract price, or the selling price. (Emphasis added.)

By adding selling costs to adjusted basis, the taxpayers will reduce the payment in the year of sale, thereby contravening this proscription.

These internal inconsistencies, however, have been created by the Commissioner's misuse of the term "adjusted basis" in the regulations. Under the circumstances of this case, we decline to adopt a meaning of "adjusted basis" that is contrary to §§ 1011 and 1016 of the Code in order to rectify the inconsistencies.

We do not hold that the § 1016 meaning of "adjusted basis" is always controlling when that term is used in a Treasury Regulation.[6] We hold only that Treas. Reg. § 1.453–4(c) does not present an appropriate case for departing from the § 1016 definition. Whether selling costs reduce the payment in the year of sale for the purpose of the 30 percent test is an arbitrary and technical determination. Either approach is consistent with installment reporting and the concept of capital gain. Our holding will not affect the integrity of the 30 percent test by creating a loophole through which installment reporting can be abused.[7] Under these circumstances, there is no convincing reason to depart from the § 1016 meaning of "adjusted basis."

The judgment of the Tax Court is reversed.

---

**6.** Specifically, we do not hold that the § 1016 meaning of "adjusted basis" must be applied in Treas.Reg. § 1.453–1(b)(1) in a way that permits a *double deduction* of selling expenses.

**7.** At most, our refusal to overlook the Commissioner's misuse of "adjusted basis" shifts the 30 percent line, which is itself arbitrary, to a position slightly more favorable to the taxpayer.