T.C. Memo. 1997-252


UNITED STATES TAX COURT


SHIZUO GEORGE KURATA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5515-95.                          Filed June 4, 1997.


    1.  <u>Held</u>:  Gain recognized because P failed to
prove sec. 1033, I.R.C., involuntary conversion of
property.
    2.  <u>Held</u>, <u>further</u>, deductions denied for
miscellaneous employee business expenses and for moving
expenses because P failed to substantiate such
expenditures.
    3.  <u>Held</u>, <u>further</u>, sec. 6651(a)(1), I.R.C.,
addition to tax for failure to file timely return
sustained.
    4.  <u>Held</u>, <u>further</u>, sec. 6662(a), I.R.C., accuracy
related penalty imposed for negligence or disregard of
rules or regulations.


Shizuo George Kurata, pro se.

Shari C. Mauney, J. Robert Cuatto, and Rick V. Hosler, for
respondent.

MEMORANDUM OPINION

HALPERN, Judge: By notice of deficiency dated January 26,
1995, respondent determined a deficiency in, an addition to, and
a penalty on petitioner's Federal income tax as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Under Sec. 6662(a) |
|------|-----------|------|------|
| 1989 | $34,821 | $8,276 | $6,964 |

Unless otherwise noted, all section references are to the
Internal Revenue Code in effect for the year in issue, and all
Rule references are to the Tax Court Rules of Practice and
Procedure.

The issues for decision are (1) the amount of gain realized
by petitioner upon the sale of certain rental properties and
whether petitioner is entitled to nonrecognition of that gain
under section 1033(a), (2) whether petitioner is entitled to
certain disallowed Schedule A deductions, and (3) whether
petitioner is liable for the addition to tax and penalty.  The
parties have stipulated various facts, which we so find.  The
stipulations of facts filed by the parties and accompanying
exhibits are incorporated herein by this reference.  Although the
issues for decision are principally factual, we need find few
facts in addition to those stipulated by the parties.
Accordingly, we shall not separately set forth our findings of

fact and opinion, and the additional findings of fact that we must make are contained in the discussion that follows. After setting forth certain background information, we shall address (1) the adjustments made by respondent that are in dispute and (2) the addition to tax and penalty that are in dispute. Petitioner bears the burden of proof on all questions of fact. Rule 142(a).

I. Background

Petitioner maintained his legal residence in Phoenix, Arizona, at the time the petition in this case was filed.

During 1989, petitioner was a consulting engineer and a general partner with TQA Associates, a Texas based consulting firm.

Petitioner is a calendar year taxpayer. Petitioner filed an Application for Automatic Extension of Time to File U.S. Individual Income Tax Return for 1989 requesting an extension of time to August 15, 1990. Petitioner also filed an Application for Additional Extension of Time to File U.S. Individual Income Tax Return for 1989 requesting an extension of time to September 15, 1990. Petitioner filed a U.S. Individual Income Tax Return, Form 1040, for 1989 (the 1989 tax return), which was received by the Internal Revenue Service Ogden Service Center on August 22, 1991. The envelope used by petitioner to mail the 1989 tax return is postmarked August 20, 1991.

II.  Disputed Adjustments

    A.  Sale of Mukilteo Condominiums

    On or about November 13, 1981, petitioner purchased five condominium units located in Mukilteo, Washington (the five units).  Petitioner owned those units as rental properties.  On or about January 25, 1989, petitioner transferred the five units to Great American First Savings Bank (Great Bank) in conjunction with the settlement of potential litigation regarding purported soil erosion affecting those properties.  Attached to the 1989 tax return is a "Statement of Involuntary Conversion", which relates to the five units.  That statement shows a gain in the amount of $89,339[1] on the disposition of the five units and provides that the taxpayer intends to acquire replacement property and "to defer the gain realized by the involuntary conversion" of the five units.

    In the notice of deficiency, respondent adjusted the amount realized on the sale of the five units by increasing the amount of the settlement proceeds from $206,009 to $210,500 and adjusted petitioner's adjusted basis in the five units by decreasing petitioner's initial, cost basis from $228,067 to $222,242.  Respondent determined that, after taking into account depreciation and other items, petitioner realized gain on the

-----

[1]    For simplicity, figures have been rounded to the nearest dollar, and, thus, in some of the calculations to follow, there are some minor discrepancies.

sale of the five units in the amount of $111,568, and respondent adjusted petitioner's gross income accordingly because petitioner had failed to establish that he was entitled to gain deferral on the basis of an involuntary conversion of the five units. After making a negative adjustment for an operating loss carryover, respondent increased petitioner's taxable income by $99,656.

As a threshold matter, we must determine the amount of gain realized on the sale of the five units and, in turn, the adjustments to petitioner's gross and taxable income that are in issue. Section 1001(a) provides, in part, that "gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis". Although, initially, the parties may have disputed the cost of the five units, it appears that the parties are now in agreement that petitioner paid a total of $228,067 for the five units, which amount constitutes petitioner's cost basis in the units. The parties also agree on the adjustments to petitioner's basis in the five units: (1) capital expenditures of $3,266 and (2) depreciation on buildings and personal properties of $129,483. Therefore, the parties agree that petitioner's adjusted basis in the five units is $101,850 ($101,850 = $228,067 + $3,266 - $129,483).

The parties, however, disagree on the amount realized by petitioner from the sale of the five units. Petitioner reports

the sale as follows: (1) gross settlement proceeds of $212,861, (2) settlement charges of $6,852, (3) legal costs of $2,907, and (4) operating loss carryover of $11,912. From those figures, petitioner calculates an amount realized of $191,189 ($191,189 = $212,861 - $6,852 - $2,907 - $11,912). In calculating an amount realized of $207,593 from the sale of the five units, respondent argues that $210,500 is the correct figure for settlement proceeds, subtracts legal costs of $2,907 ($207,593 = $210,500 - $2,907), and does not consider the $6,852 in settlement charges claimed by petitioner. Only after calculations for the amount realized and gain realized are complete (and the gain is included as an item of gross income; see section 61(a)(3)), does respondent subtract the operating loss carryover of $11,912 in arriving at taxable income (see sections 161, 172). The difference between the parties' figures for the amount realized, thus, results from a disagreement over the correct amount of settlement proceeds and charges to be considered in calculating the amount realized, as well as the placement of the operating loss carryover in the computations.

First, we agree with respondent that the operating loss carryover should properly be considered, if at all, only in determining taxable income and not in the separate, and preceding, operation of determining gain realized. Compare secs. 61(a)(3) and 1001 with secs. 161 and 172. Since the

parties agree with regard to the $2,907 in legal costs, we shall focus on the proper amount to be considered as (1) settlement proceeds and (2) settlement charges. The settlement statements (HUD-1s) indicate a total sales price for the five units in the amount of $210,500. We agree with respondent that that figure is the proper starting point for calculating amount realized. The HUD-1s also indicate that petitioner incurred total settlement charges of $6,248. Of that amount, $1,250 represents additional attorney's fees, $1,229 represents amounts paid for title insurance, and the remainder apparently represents unspecified amounts petitioner owed to Great Bank. We believe that the only settlement charges that can reduce the amount realized from the sale of the five units are the payments for additional attorney's fees and title insurance.[2] Petitioner has failed to persuade us

---

[2]   Expenses incurred in selling property generally reduce the gain realized. See, e.g., United States v. General Bancshares Corp., 388 F.2d 184, 187 (8th Cir. 1968) ("selling expenses incurred in the sale of a capital asset are treated as capital in nature and chargeable only against the capital proceeds"). We are satisfied that the payments for additional attorney's fees and title insurance are expenses incurred in selling the five units because those charges appear on the settlement statements; however, the presence on the settlement statements alone of unspecified amounts petitioner owed to Great American First Savings Bank does not persuade us that those amounts constitute expenses incurred in selling the five units.

In addition, it should be noted that appeal in this case would lie to the Court of Appeals for the Ninth Circuit, and that circuit may account for the selling expenses incurred on the sale of the five units by increasing petitioner's adjusted basis, as opposed to reducing the amount realized. See Kirschenmann v.
(continued...)

that unspecified amounts owed to Great Bank constitute settlement charges that properly reduce the amount realized from the sale of the five units; indeed, petitioner has not produced any evidence on that issue. In sum, we find that the sale of the five units produced settlement proceeds of $210,500 and settlement charges of $2,479.

Therefore, the amount realized by petitioner on the sale of the five units is $205,114, and the gain realized is $103,264. The adjustment to petitioner's gross income that is in issue is $103,264, and, after making a negative adjustment for the undisputed operating loss carryover, $91,352 is the adjustment to petitioner's taxable income that is in issue. Those calculations are as follows:

| Purchase price | $228,067 | Settlement proceeds | $210,500 |
|---|---|---|---|
| Capital expenditures | 3,266 | Legal costs | (2,907) |
| Depreciation | (129,483) | Settlement charges | (2,479) |
| Adjusted basis | 101,850 | Amount realized | 205,114 |

| | |
|---|---|
| Amount realized | $205,114 |
| Less adjusted basis | (101,850) |
| Equals gain realized | 103,264 |
| Adjustment to gross income in issue | 103,264 |
| Operating loss carryover | (11,912) |

_____

[2](...continued)
Commissioner, 488 F.2d 270 (9th Cir. 1973), revg. 57 T.C. 524 (1972). We believe, however, that we need not address whether selling expenses properly reduce amount realized or increase adjusted basis because, under either approach, the gain realized by petitioner in the present case would be the same amount. Since the parties agree on the figure for petitioner's adjusted basis in the five units, we shall, purely for convenience, not disturb that figure and adjust the amount realized for the expenses incurred on the sale of the five units.

### Adjustment to taxable income in issue     91,352

Now that we have determined the adjustments to petitioner's gross and taxable income that are in issue as a result of the sale of the five units, we must decide whether those adjustments are correct.

Petitioner asserts that the five units, along with 80 other similar properties, which were part of a 300-unit condominium complex located in Mukilteo, Washington (the Mukilteo complex), were damaged beyond repair as a result of soil erosion caused by drainage diffusion and saturated soil.  A homeowner's association representing the interests of the condominium owners, including petitioner, retained a law firm that initiated legal proceedings against Great Bank, which, according to petitioner, acquired the bank that had sold the properties to the condominium owners. After negotiations, the homeowner's association entered into a group settlement agreement with Great Bank on January 15, 1989. Pursuant to that agreement, petitioner transferred the five units to Great Bank in exchange for cash and debt forgiveness. Petitioner claims that the five units were destroyed beyond repair and, as a result of the interlocking ownership structure of the Mukilteo condominium properties, "the group settlement was the only practical recourse available to the individual owners". On that basis, petitioner claims that the five units were involuntarily converted.  Petitioner contends that he applied the

proceeds received from the sale of the five units towards the purchase of qualifying replacement property located in Glendale, Arizona, on January 31, 1991, and, therefore, is entitled to nonrecognition of gain on the sale of the five units.

Section 1033(a), among other things, allows nonrecognition of gain to the extent that proceeds received from the compulsory or involuntary conversion of property are used to purchase other property similar or related in service or use to the property so converted (qualifying replacement property).  Involuntary conversions resulting from the destruction of property in whole or in part are specifically enumerated as a type of disposition that qualifies under the statute.  Sec. 1033(a).  "[C]onversions or sales of property where the owner had a choice of keeping the property or converting or selling it" do not qualify for nonrecognition treatment.  C.G. Willis, Inc. v. Commissioner, 41 T.C. 468, 474 (1964), affd. 342 F.2d 996 (3d Cir. 1965). Therefore, petitioner must prove that, as a result of the destruction of the five units in whole or in part, the five units were involuntarily converted and that the purchase of property located in Glendale, Arizona, on January 31, 1991, constituted the purchase of qualifying replacement property.

In this case, petitioner has failed to prove that the five units were destroyed in whole or in part as that phrase is used in section 1033(a).  At trial, petitioner offered only his

uncorroborated testimony that the five units "were damaged beyond repair". Petitioner did not support that assertion with any pictures, documentary evidence, or the testimony of any third party. We need not, and decline to, accept petitioner's assertion at face value given his failure to corroborate. See, e.g., Day v. Commissioner, 975 F.2d 534, 538 (8th Cir. 1992), affg. in part, revg. in part T.C. Memo. 1991-140; Liddy v. Commissioner, 808 F.2d 312, 315 (4th Cir. 1986), affg. T.C. Memo. 1985-107.

Respondent, however, presented the testimony of James Bennett, the building official for the City of Mukilteo, Washington, since July 1986 to the time of trial. Mr. Bennett directed building inspection functions for the City of Mukilteo, including structural nuisance inspections, abatement actions, and condemnations. Mr. Bennett stated that no order of condemnation was ever issued to any of the properties in the Mukilteo complex. In addition, Mr. Bennett stated that, in 1996, when he visited the Mukilteo complex, he observed that the buildings that housed the individual condominium units were occupied and performing. Petitioner did not attempt to refute any of Mr. Bennett's statements. Indeed, petitioner has not been back to Mukilteo, Washington, since the sale of the five units to Great Bank. Mr. Bennett's testimony coupled with petitioner's failure to rebut that testimony is inconsistent with petitioner's assertion

that the five units were destroyed in whole or in part. We are not persuaded by petitioner's unsupported assertions, and we find that the five units were not destroyed in whole or in part.

Our finding that the five units were not destroyed in whole or in part precludes nonrecognition treatment under section 1033(a). We also note, however, that petitioner has failed to submit any evidence, other than his uncorroborated assertions at trial, that he was compelled to enter into the group settlement agreement with Great Bank or that petitioner acquired property similar or related in service or use to the five units. Petitioner's attempt to introduce evidence in his brief, filed July 1, 1996, to support his claim under section 1033(a) is rejected. See Rule 143(b). Thus, respondent's adjustment increasing petitioner's gross income for the gain realized on the sale of the five units is sustained to the extent of $103,264, and, accordingly, respondent's adjustment increasing petitioner's taxable income is sustained to the extent of $91,352.

B. Employee Business Expenses

Petitioner claimed on the 1989 tax return a miscellaneous deduction in the amount of $20,388 for unreimbursed employee business expenses. In the notice of deficiency, respondent disallowed $19,978 of that deduction and increased petitioner's taxable income accordingly. Respondent explained that petitioner was not entitled to the disallowed deduction because he failed to

establish that the deduction was for an ordinary and necessary business expense or was expended for the purpose designated on the 1989 tax return.  The 1989 tax return indicates that petitioner claimed the deduction for vehicle expenses, travel expenses, and meal and/or entertainment expenses.

Section 162(a)(2) permits a deduction for traveling expenses, including amounts expended for meals and lodging, incurred by a taxpayer while away from home in the pursuit of a trade or business.  The taxpayer must demonstrate that the expenses were (1) reasonable and necessary traveling expenses, (2) incurred "while away from home", and (3) incurred in the pursuit of business.  See, e.g., Commissioner v. Flowers, 326 U.S. 465, 470 (1946).  In addition, section 274(d) imposes strict substantiation requirements.  Section 274(d) provides that, with certain inapplicable exceptions, no deduction for traveling expenses (or similar items) shall be allowed

> unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *

At trial, petitioner stated that, in 1989, he maintained "tax homes" in Arlington, Texas, and Everett, Washington, while working as a contract engineer in California.  Petitioner claims

that he is entitled to deduct travel and travel related expenses incurred in California in the pursuit of his business as a contract engineer. Respondent asserts that petitioner did not maintain a tax home during 1989. In addition, respondent contends that petitioner's claimed expenses are not ordinary and necessary business expenses under section 162 and that petitioner has failed to meet the substantiation requirements of section 274(d).

Petitioner testified that he incurred the claimed business expenses and that he provided the required substantiation to the Internal Revenue Service. Petitioner, however, has failed to corroborate his testimony. The record is barren of the type of substantiation required by section 274(d). Petitioner did not provide the Court with any records or other evidence setting forth the amount, time, place, and business purpose of the expenditures claimed. See sec. 1.274-5, Income Tax Regs. So, even if the Court were to assume, arguendo, that petitioner's travel and travel related expenditures are deductible under section 162(a)(2), petitioner's failure to substantiate any of those expenses pursuant to section 274(d) requires disallowance of the claimed deduction. Thus, respondent's adjustment increasing petitioner's taxable income as a result of the disallowed employee business expense deduction is sustained.

C. <u>Moving Expenses</u>

Petitioner claimed on the 1989 tax return a moving expense deduction in the amount of $1,322. In the notice of deficiency, respondent disallowed that deduction in full and increased petitioner's taxable income accordingly. Respondent explained that petitioner was not entitled to the deduction because he was not a full-time employee in the general location of his new principal place of work for at least 39 weeks during the 12-month period immediately following his arrival in such location. See sec. 217(c)(2).

In his brief, petitioner concedes that he erred in reporting the claimed expenses as moving expenses under section 217. He argues, instead, that the claimed expenses should be deductible as employee business expenses under section 162(a)(2). Petitioner's assertion is not supported by the type of substantiation required under section 274(d). See <u>supra</u> sec. II.B. Thus, respondent's adjustment increasing petitioner's taxable income for the disallowed moving expense deduction is sustained.

III. <u>Additions to Tax</u>

A. <u>Section 6651(a)(1)</u>

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return (determined with regard to any extension of

time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  Petitioner bears the burden of proof as to reasonable cause and the absence of willful neglect.  See Rule 142(a).

In the notice of deficiency, respondent determined that the 1989 tax return was due on October 15, 1990, and that petitioner filed that return on August 22, 1991.  Petitioner does not dispute those facts.  Petitioner did not present any testimony or other evidence to explain his failure to file the 1989 tax return in a timely manner.  Petitioner's attempt to introduce evidence in his brief is rejected.  See Rule 143(b).  Petitioner has not carried his burden of proof.  Respondent's determination of an addition to tax under section 6651(a)(1) is sustained, except to the extent that it relates to the difference between our calculation of the adjustments to income arising from the sale of the five units and respondent's calculation (the section II.A. difference, <u>supra</u>).

B.  <u>Section 6662(a)</u>

Section 6662(a) provides for an accuracy related penalty in the amount equal to 20 percent of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  The term "negligence" includes any failure to make a reasonable

attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

In the notice of deficiency, respondent determined that the entire underpayment of tax for the 1989 taxable year was due to petitioner's negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that respondent's determination is erroneous. See Rule 142(a). On the record before us, we find that respondent's determination of a penalty under section 6662(a) is correct, except to the extent that it relates to the section II.A. difference, supra.

IV. Conclusion

Respondent's determinations of a deficiency in, an addition to, and a penalty on petitioner's Federal income tax for the 1989 taxable year are sustained to the extent set forth in this report.

Decision will be entered under Rule 155.