T.C. Memo. 2012-357

UNITED STATES TAX COURT

ROBERT W. PARKER AND KATHY S. PARKER, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28687-10.                    Filed December 26, 2012.

<u>Pietro E. Canestrelli</u>, <u>Stanley A. Harter</u>, and <u>Allison F. Tilton</u>, for petitioners.

<u>Monica D. Gingras</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in and penalties on petitioners' Federal income tax as follows:

**[*2]**

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|------------------------|
| 2005 | $152,026 | $30,405 |
| 2006 | 11,230 | --- |
| 2007 | 36,354 | 7,271 |

After concessions,[1] the issues remaining for decision are: (1) whether petitioners failed to report long-term capital gain of $853,337 for 2005; (2) whether petitioners are entitled to deduct the attorney's fees they claimed on Schedule E, Supplemental Income or Loss, for 2007; (3) whether petitioners are entitled to deduct the labor expenses they claimed on Schedules E for 2006 and 2007; and (4) whether petitioners are liable for accuracy-related penalties under section 6662(a)[2] for 2005 and 2007.

---

[1] The parties agree that petitioners must report interest income of $264,584 for 2005, $315,749 for 2006, and $205,939 for 2007 and do not have to report any ordinary income for 2005 or 2006 from Indian Truck Trail Development (Indian Truck). Petitioners allege in their petition that respondent erred in increasing their distributive shares of capital gain from Indian Truck by $37,571 for 2007. However, petitioners did not raise this issue at trial or on brief, and we therefore deem that they have conceded it. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987). The remaining adjustments are computational and will be resolved under Rule 155.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

**[*3]**                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in California.

Robert W. Parker (Mr. Parker) has been in the real estate development business for approximately 30 years. He has conducted his business through a number of entities over the years and has closed between 150 and 200 escrows. On September 1, 1997, petitioners formed Indian Truck, a general partnership, to develop real estate, and each held a 50% partnership interest.

I.      Indian Truck

In 2004 Indian Truck and GPS Sycamore-Sycamore Creek, LLC (Sycamore), entered into three deals for the sale of real property owned by Indian Truck. Each deal was conducted in the following manner: (1) Indian Truck and Sycamore negotiated an upfront "finder's fee" for Sycamore's "due diligence" work;[3] (2) Indian Truck granted Sycamore the right to purchase the property and placed it in escrow; (3) Sycamore assigned its right to another entity; and (4) Indian Truck paid Sycamore the "finder's fee" after the escrow closed. Indian

---

[3] The "due diligence" work included investigating permissible uses of the property, checking zonings, and finding prospective buyers.

[*4] Truck paid Sycamore "finder's fees" of $100,000 on a $3 million deal and $50,000 on a $357,000 deal.[4]

In 2005 Indian Truck and Sycamore entered into another deal on a 23-acre parcel of vacant land in Corona, California (Corona property). They structured the deal on the same terms as the three 2004 deals. They negotiated a $50,000 "finder's fee", whereupon Indian Truck placed the Corona property in escrow. Approximately four weeks before closing, Sycamore assigned its right to purchase the Corona property to 14 Oaks Associates, LLC (Oaks Associates). Approximately two weeks before closing, Indian Truck and Oaks Associates agreed to modify the terms of the sale from $5 million cash to $1 million cash and a $4 million interest-bearing note secured by deed of trust payable in full on or before March 21, 2010 (secured note). Oaks Associates paid Indian Truck $1 million cash and signed the secured note as agreed.

On March 21, 2005, Indian Truck deeded the Corona property to Oaks Associates. The following day, Oaks Associates transferred the Corona property to Stewart Title of California as trustee for the benefit of Indian Truck for the purpose of securing performance on the secured note. Michael Smith, the partner

---

[4] Indian Truck and Sycamore agreed that Indian Truck would not pay a "finder's fee" on the third deal for $1.25 million because it sold the land "very cheap".

[*5] in charge of Sycamore, instructed Indian Truck to pay the $50,000 "finder's fee" to his mother-in-law, Nina Friedman. On April 6, 2005, Indian Truck paid Mrs. Friedman with a check drawn on petitioners' personal bank account for $48,000 bearing the notation "consultant fee" in the memo line and a second check for $2,000 made out to cash without any notation in the memo line.

Indian Truck attached Form 6252, Installment Sale Income, to its 2005 Form 1065, U.S. Return of Partnership Income, reporting the selling price of the Corona property as $5 million and its basis as $2,047,320. Indian Truck did not elect to report the sale under a method other than the installment method and did not report the $1 million cash payment received in 2005 from Oaks Associates. Indian Truck received interest payments from Oaks Associates on the secured note during the years in issue but did not receive any payments of principal. In 2008 Oaks Associates defaulted on the secured note, and in May 2009 Indian Truck foreclosed on the Corona property.

## II. Palladian Growers

In 2006 petitioners formed Palladian Growers, a general partnership, with the intent of growing citrus and avocado trees on two five-acre parcels of land in the hills outside of Temecula, California. At that time Renaissance Estates Builders was finishing construction of petitioners' personal residence on one of

**[\*6]** the parcels (residence parcel), and the other parcel was covered with native scrub brush (brush parcel). In mid-2006 Palladian Growers contracted with Evencio Herrera, a former employee of Renaissance Estates Builders, to plant trees on the two parcels. By the end of 2006 Mr. Herrera had planted on the residence parcel approximately 100 trees along both sides of the driveway leading to petitioners' personal residence. In 2007 Mr. Herrera started working on the brush parcel. He cleared the native scrub brush, graded the land, installed an irrigation system, and began planting trees. Mr. Parker paid Mr. Herrera weekly in cash and recorded the payments on a calendar. Palladian Growers reported labor expenses for Mr. Herrera of $26,000 and $23,600 on its 2006 and 2007 tax returns, respectively.

III.   The Tax Returns and IRS Audit

Mr. Parker's son-in-law, John Hadjis, prepared petitioners' personal Federal income tax returns and Indian Truck's and Palladian Growers' partnership returns for the years in issue. Mr. Parker provided Mr. Hadjis with the numbers to prepare the returns but did not provide him with any of the underlying documents. Petitioners claimed attorney's fees of $59,240 on Schedule E for 2007 and labor expenses of $26,000 and $23,600 on Schedules E for 2006 and 2007, respectively. Mr. Hadjis also prepared and issued to Mr. Herrera a Form 1099-MISC,

**[*7]** Miscellaneous Income, reporting that Palladian Growers paid Mr. Herrera $20,000 as nonemployee compensation for 2007.[5]

The Internal Revenue Service (IRS) audited petitioners' tax returns for 2004 to 2007.  Revenue Agent Steve Parker (RA Parker)[6] of the IRS performed the audit.  He determined that Indian Truck had materially overstated its bases in the properties it sold in 2004 and 2005.  In response, petitioners hired the accounting firm Kuebler, Prudhomme & Co. (KP&C) to research the historic adjusted bases of the properties.  As relevant here, KP&C determined the adjusted basis of the Corona property to be $470,677.  RA Parker accepted KP&C's research and computations and allowed Indian Truck a basis of $683,313 in the Corona property on account of additional information petitioners provided at audit.  However, RA Parker did not allow Indian Truck to increase its basis in the Corona property by the $50,000 "finder's fee" it paid to Mrs. Friedman.  Petitioners timely petitioned the Court for redetermination of the deficiency.

---

[5] The Form 1099-MISC was not filed with the IRS.

[6] At the time of trial RA Parker was an Appeals Officer at the IRS Riverside Appeals Office.

[*8]                              OPINION

I.      General Rules

The Commissioner's determinations are generally presumed correct, and the  taxpayer bears the burden of proving the determinations erroneous.[7]  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer bears the burden of proving that he or she is entitled to the deductions claimed, and this includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).  A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish that he or she is entitled to the deductions.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Taxpayers are allowed a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business.  Sec. 162(a).  Whether an expenditure is ordinary and necessary is generally a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  Generally, for an expenditure to be an ordinary and necessary business expense, the taxpayer must show a bona fide business purpose for the expenditure; there must be a proximate

---

[7]  Petitioners have neither claimed nor established that they satisfy the requirements of sec. 7491(a).  Accordingly, the burden of proof does not shift to respondent.

[*9] relationship between the expenditure and the business of the taxpayer. Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 660 (1962); Henry v. Commissioner, 36 T.C. 879, 884 (1961). To be "necessary" within the meaning of section 162, an expense needs to be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. 111, 113 (1933). The requirement that an expense be "ordinary" connotes that "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940) (citing Welch v. Helvering, 290 U.S. at 114).

When taxpayers establish that they have incurred deductible expenses but are unable to substantiate the exact amounts, we can estimate the deductible amount in some circumstances, but only if the taxpayers present sufficient evidence to establish a rational basis for making the estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amount allowable, we bear heavily upon taxpayers whose inexactitude is of their own making. See Cohan v. Commissioner, 39 F.2d at 544. There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was paid or incurred. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

[*10] II.    Sale of the Corona Property

Section 1001(a) provides that the gain realized from the sale of property shall be the excess of the amount realized over the adjusted basis.  The amount realized consists of "the sum of any money received plus the fair market value of the property (other than money) received."  Sec. 1001(b).  If the taxpayer has a realized gain (after the calculations of the amount realized and the adjusted basis), the taxpayer must generally recognize the entire gain as income.  See sec. 1001(c). The tax law, however, provides that for certain sales of property the taxpayer can use the installment method to defer recognition of income.  See secs. 451(a), 453, 1001(c) and (d).

A.    Installment Sale

Under section 453(a), a taxpayer generally must use the installment method to report income from an installment sale.  An installment sale is a "disposition of property where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs."  Sec. 453(b)(1).  Using the installment method, the taxpayer recognizes a proportion of the payment received in any given year commensurate with the percentage that the gross profit bears to the total contract price.  See sec. 453(c); Wang v. Commissioner, T.C. Memo. 1998-127; Berger v. Commissioner, T.C. Memo. 1996-76.  The installment method

**[*11]** automatically applies to an installment sale unless the taxpayer elects out. See

sec. 453(a), (d); Bolton v. Commissioner, 92 T.C. 303, 306 (1989).

Oaks Associates incurred an obligation under the terms of the secured note to

pay Indian Truck all unpaid principal and accrued interest on March 21, 2010.

Oaks Associates did not make any payments of principal in 2005 (the year of the

disposition), and thus it was obligated to make at least one payment to Indian Truck

after the close of the taxable year in which the disposition occurred. Therefore, the

installment method automatically applied unless Indian Truck elected out.

Petitioners admit that Indian Truck did not elect out of the installment

method. Notwithstanding, they argue that "the substance of the sale of the Corona

Property was not an installment sale although in form it was reported as an

installment sale". They further argue that the sale of the Corona property was in

substance a cash sale for $1 million, and Indian Truck "should therefore be allowed

* * * [its] full basis" in the Corona property to "offset the $1,000,000 amount

realized".[8] Their argument is premised upon their belief that the sale was

---

[8] Petitioners' argument is apparently founded on their mistaken belief that Indian Truck's amount realized on the sale of the Corona property would be only the $1 million cash received. However, the amount realized from a sale of property is the sum of any money received plus the fair market value of the

(continued...)

**[\*12]** "originally supposed to be an all cash sale" and Oaks Associates "changed the terms at the last minute with the understanding that the sale would eventually revert back to the original all cash sale."

The law is well settled that "[q]uestions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants". Weiss v. Stearn, 265 U.S. 242, 254 (1924). "Intent alone does not determine tax consequences, and the bare fact that a taxpayer desires to fall within a particular section of the Internal Revenue Code is not controlling where actions belie expressed intent." Garcia v. Commissioner, 80 T.C. 491, 498 (1983). Thus, even if Indian Truck and Oaks Associates genuinely intended to "revert back to the original all cash sale", the tax consequences must be determined by the sale as it actually took place, which was an installment sale in both form and substance. Oaks Associates incurred an obligation under the secured note to make at least one payment to Indian Truck after the close of 2005. The secured note was a valid and genuine debt obligation, as evidenced by the fact that Oaks Associates made

---

[8](...continued)
property (other than money) received. Sec. 1001(b). The $4 million secured note represents property other than money. See Schulman v. Commissioner, 93 T.C. 623, 637-638 (1989). Absent evidence to the contrary, the secured note is valued at face. Id. at 638. Therefore, if the installment method did not apply, Indian Truck's amount realized would be $5 million.

**[*13]** payments of interest to Indian Truck during the years in issue and Indian Truck foreclosed on the Corona property after Oaks Associates defaulted on the secured note. Accordingly, we conclude that Indian Truck must report the sale of the Corona property, including the $1 million payment received in 2005, under the installment method.

B.    Adjusted Basis in the Corona Property

Next we must determine what basis Indian Truck had in the Corona property for purposes of calculating its gain realized on the installment sale. RA Parker allowed Indian Truck a basis of $683,313 on account of KP&C's research and computations and additional information petitioners provided at audit. At issue is whether Indian Truck may increase its basis over the amount RA Parker allowed by the $50,000 "finder's fee". In the Court of Appeals for the Ninth Circuit, to which an appeal of this case would lie absent a stipulation to the contrary, selling expenses are treated as an adjustment to the seller's basis in the property. Kirschenmann v. Commissioner, 488 F.2d 270, 272 (9th Cir. 1973), rev'g 57 T.C. 524 (1972); see also sec. 15A.453-1(b)(2)(v), Temporary Income Tax Regs., 46 Fed. Reg. 10710 (Feb. 4, 1981). Respondent argues that petitioners have not

[*14] proven the payments to Mrs. Friedman relate to expenses on the sale of the Corona property.[9]

Mr. Parker credibly testified that petitioners paid the $50,000 "finder's fee" to Mrs. Friedman at the direction of Michael Smith as consideration for the "due diligence" Sycamore performed on the sale of the Corona property. Mr. Parker further credibly testified that the sale would not have occurred but for the payment of the "finder's fee". Petitioners introduced into evidence copies of the checks with which they paid Mrs. Friedman the "finder's fee". We find the checks are credible evidence to corroborate Mr. Parker's oral testimony. Accordingly, Indian Truck may increase its basis in the Corona property by the $50,000 "finder's fee" as a selling expense.

III.   Indian Truck's Attorney's Fees

Indian Truck reported a $59,240 expense on its 2007 Form 1065 for attorney's fees. Mr. Parker testified that Indian Truck paid its business attorney, John Giardinelli, the $59,240 with four checks. However, petitioners have not produced any records or receipts to substantiate the payment and have not

---

[9] Respondent also argues that petitioners have not proven the "finder's fee" was not already included in the basis RA Parker allowed. However, after examining the record before us, we find that the "finder's fee" is not duplicative of other expenses already factored into the basis.

**[*15]** presented sufficient evidence to provide some basis upon which an estimate of the expense may be made under the <u>Cohan</u> rule. Accordingly, petitioners are not entitled to deduct the $59,240 expense for attorney's fees on their Schedule E for 2007.

IV.    <u>Palladian Growers' Labor Expenses</u>

Palladian Growers reported labor expenses of $26,000 and $23,600 on its 2006 and 2007 Forms 1065, respectively. Mr. Parker testified that he paid Mr. Herrera weekly in cash and recorded the payments on a calendar "ever since * * * [he] started so that * * * [he] could keep track of how many days that * * * [he] paid for." He further testified that of the $26,000 reported for labor expenses for 2006, he paid part of that amount to Mr. Herrera and part to Renaissance Estate Builders, and he paid all of the $23,600 reported for 2007 to Mr. Herrera.

Petitioners have not produced any records or receipts to substantiate the payments for 2006, and for 2007 they produced only the Form 1099-MISC issued to Mr. Herrera. However, the Form 1099-MISC is not sufficient substantiation because it does not match the amount Palladian Growers reported on its Form 1065,[10] it was not filed with the IRS, and petitioners have not produced any supporting documentation. See <u>Weatherly v. Commissioner</u>, T.C. Memo. 2011-

---

[10] Petitioners were unable to explain the inconsistency at trial.

[*16] 206 (finding that a taxpayer who produced Forms 1099-MISC that were not filed with the IRS and who did not produce any supporting documentation had not substantiated his claimed contract labor expenses).

Mr. Parker testified that he has in his possession the calendar on which he recorded the payments to Mr. Herrera, but petitioners did not introduce the calendar into evidence. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Petitioners have not presented sufficient evidence to permit a reasonable estimate of Palladian Growers' labor expenses under the Cohan rule. See, e.g., Bruns v. Commissioner, T.C. Memo. 2009-168 (sustaining the Commissioner's disallowance for lack of substantiation of the taxpayers' claimed contract labor expenses when they did not provide any proof of payment). Accordingly, petitioners are not entitled to deduct labor expenses of $26,000 for 2006 and $23,600 for 2007 on their Schedules E.

V.    Accuracy-Related Penalties

Respondent determined that petitioners are liable for section 6662(a) accuracy-related penalties for 2005 and 2007. Pursuant to section 6662(a) and

**[\*17]** (b)(1) and (2), a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax attributable to (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. Negligence "includes any failure to make a reasonable attempt to comply with the provisions of this title", and disregard "includes any careless, reckless, or intentional disregard." Sec. 6662(c). "Negligence" includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. An "understatement" is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" of income tax exists if the understatement exceeds the greater of (1) 10% of the tax required to be shown on the return for a taxable year or (2) $5,000. See sec. 6662(d)(1)(A). The burden of production is on respondent to produce evidence that it is appropriate to impose the relevant penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Petitioners knew that Indian Truck had received a $1 million payment on the installment sale in 2005 and they admit that Indian Truck did not elect out of the installment method. Indian Truck was required to report the payment on its Form 6252, and petitioners, who controlled Indian Truck as its sole partners, were

[*18] required to report on their 2005 tax return the income that Indian Truck recognized upon receipt of the payment. This they failed to do. Petitioners also failed to keep adequate books and records and to substantiate their claimed deductions for Indian Truck's attorney's fees and Palladian Growers' labor expenses. See Higbee v. Commissioner, 116 T.C. at 449 (the taxpayer's failure to keep adequate books and records or to substantiate properly the items in question was evidence of negligence). Therefore, respondent has met his burden of production.[11]

The accuracy-related penalty under section 6662(b)(1) or (2) is not imposed with respect to any portion of the underpayment as to which the taxpayer shows that he acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. Reliance on the advice of a tax professional may establish reasonable cause and good faith. See United States v. Boyle, 469 U.S. 241, 250 (1985). A taxpayer claiming reliance on professional advice must show that: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's

---

[11] Alternatively, respondent will have met his burden of production insofar as the Rule 155 computations show substantial understatements of income tax.

[*19] judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners argue that they reasonably relied on Mr. Hadjis to issue the Form 1099-MISC to Mr. Herrera in 2007 and therefore they "should specifically not be subject to any penalties related to the deduction claimed for fees paid to * * * [Mr. Herrera] in 2007." Petitioners do not argue, and have not proven, that they received or relied upon any advice from Mr. Hadjis with respect to the tax treatment of any item at issue herein. In order to constitute "advice" under section 1.6664-4(c)(2), Income Tax Regs., a communication must reflect the adviser's "analysis or conclusion." Woodsum v. Commissioner, 136 T.C. 585, 593 (2011) ("The taxpayer must show * * * that he 'relied in good faith on the adviser's judgment.'" (quoting Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99)). Petitioners did not call Mr. Hadjis as a witness and presented no evidence indicating that he exercised "judgment" when preparing the tax returns for the years in issue. The mere fact that an accountant prepared a tax return does not mean that he "opined on any or all of the items reported therein." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 100. Accordingly, we find that petitioners are liable for accuracy-related penalties on the amounts of their underpayments of tax as computed under Rule 155 for 2005 and 2007.

**[\*20]** In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered under</u>

<u>Rule 155</u>.