# United States Tax Court

T.C. Memo. 2022-102

HEINRICH C. SCHWEIZER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

―――――――

Docket No. 3679-18.                    Filed October 6, 2022.

―――――――

*Peter J. Tomao* and *Lawrence J. Scherer*, for petitioner.

*Rachel L. Schiffman*, *Jane J. Kim*, *Thomas A. Deamus*, *Brian J. Bilheimer*, and *Mimi M. Wong*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: This case concerns petitioner's entitlement to a charitable contribution deduction for a gift of art. By Order served June 15, 2021, we granted in part respondent's Motion for Partial Summary Judgment, holding that petitioner had failed to satisfy the substantiation requirements of section 170(f)(11) and the regulations promulgated thereunder for claiming this deduction.[1] In April 2022 we held a trial to decide the sole remaining issue: whether petitioner's failure to meet these requirements was "due to reasonable cause and not to willful neglect." *See* § 170(f)(11)(A)(ii)(II). We hold that petitioner did not have

―――――――――

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] reasonable cause for his failures, and we thus sustain disallowance of the charitable contribution deduction.

FINDINGS OF FACT

The parties submitted a Stipulation of Facts including exhibits that is incorporated by this reference. Petitioner resided in New York when he timely petitioned this Court.

A.    *Petitioner's Career*

Petitioner has a long, varied, and distinguished career as an African art dealer and collector. He was born in Munich, Germany, to parents who were both artists. He began collecting African art at a young age, beginning with less expensive objects but progressively setting his sights higher.

Petitioner received most of his education in Germany. He was awarded a law degree by a prestigious German university and passed a five-day state law exam (equivalent to a bar exam in the United States). He then embarked on an internship in New York City with Sotheby's, one of the world's leading brokers of decorative and fine art. When this internship ended, he returned to Germany for graduate studies in law, spending five years working towards a Ph.D. Those studies were curtailed in 2006 when Sotheby's invited him to apply for a vacancy in its African art department. Petitioner accepted that offer, left his Ph.D. program before finishing his dissertation, and moved to New York to work full time in the African art field.

Petitioner served as the Director of African and Oceanic Art at Sotheby's from 2006–2015. He was successful in this position; during his tenure, the value of Sotheby's annual auctions of African art rose from $2 million to $55 million. One aspect of his job was to evaluate African art held by customers and potential customers. In discharging that responsibility he regularly gave customers estimates of the price at which their art might sell at auction. He also worked directly with Sotheby's appraisal department, assisting its professionals in providing customers with formal appraisals concerning the fair market value (FMV) of artwork.

Petitioner filed his first U.S. income tax return in 2007. On the recommendation of a colleague at Sotheby's he hired Wasserman & Wise (Wasserman firm) to prepare his returns. He dealt primarily with Larry Wasserman, who signed the returns as the preparer. But Alan Kassel,

[*3] an enrolled agent in the firm, did most of the actual return preparation for petitioner.

B.  *Petitioner's Donations of Art*

Shortly after assuming his position at Sotheby's, petitioner began donating works of African art to various museums.  He claimed charitable contribution deductions for these gifts, all of which were reported on returns prepared by the Wasserman firm.  These gifts included a work valued at $60,000 in 2007, a work valued at $100,000 in 2009, and a work valued at $5,000 in 2010.

In 2011, the tax year at issue, petitioner decided to make a substantial contribution to the Minneapolis Institute of Art (MIA) to honor a colleague who was in poor health.  The work he selected for donation was a Dogon sculpture that he had acquired in Paris, allegedly for $100,000, in 2003.  (The Dogon people are indigenous to the central plateau region of Mali, in West Africa.)

On December 6, 2011, petitioner donated the Dogon sculpture to the MIA.  He anticipated claiming a charitable contribution deduction for this gift, and he received from the Internal Revenue Service (IRS) an automatic six-month extension of time, to October 15, 2012, to file his 2011 return.  *See* § 6081(a).  On June 7, 2012, he secured Mr. Kassel's assistance in requesting a Statement of Value (SOV) from the IRS with respect to the Dogon sculpture.  A taxpayer may request an SOV from the IRS Art Appraisal Services (AAS) unit before filing the return on which a gift of art is to be reported, hoping to receive assurance that the IRS will accept the value as claimed.  *See* I.R.S. Publication 561, Determining the Value of Donated Property 4 (Jan. 2022).

Mr. Kassel transmitted the SOV package to the AAS unit.  This package included a one-and-a-half page "appraisal" of the Dogon sculpture by Michael Oliver, a New York dealer in African art, who valued the work at $600,000.  Mr. Oliver, who testified at trial, was not a certified appraiser in 2011 or at any time thereafter.  He acknowledged that this was the only FMV appraisal that he had ever done.

Mr. Kassel also included in the SOV package a substantially complete Form 8283, Noncash Charitable Contributions, reporting a $600,000 value for the sculpture.  This document included Mr. Oliver's signature and the signature of an MIA officer attesting to receipt of the gift.  Petitioner secured these signatures from Mr. Oliver and from the

[*4] MIA officer. At no time did Mr. Kassel have any contact with Mr. Oliver or with anyone at the MIA.

C. *Petitioner's 2011 Tax Return*

Petitioner did not receive a response from the AAS unit before his 2011 return became due. The Wasserman firm accordingly prepared, and petitioner filed on October 9, 2012, a return claiming a $600,000 deduction for his gift of the Dogon sculpture. Because that amount exceeded the maximum allowable as a deduction for 2011, *see* § 170(d)(1)(A), he claimed a $406,395 deduction for that year and carried the balance forward.

Petitioner included with his return a partially completed Form 8283. When a taxpayer donates property (other than publicly traded securities) valued in excess of $5,000, Form 8283 instructs the taxpayer to include the following information on section B of the form: (1) a description of the donated property, (2) a brief summary of its physical condition, (3) the appraised FMV of the property, (4) the date the property was acquired by the donor, (5) the manner of acquisition, and (6) the donor's "cost or adjusted basis." The instructions to Form 8283 state that, "[i]f you have reasonable cause for not providing the information . . . , attach an explanation so your deduction will not automatically be disallowed." Instructions for Form 8283, at 5 (Dec. 2006). Form 8283 advises the taxpayer that "[a]n appraisal is generally required for property listed in Section B (see instructions)" and that "[i]n certain cases, you must attach a qualified appraisal of the property. See instructions."

The Form 8283 appended to petitioner's 2011 return was missing most of this information. The Dogon sculpture, for which a $600,000 value was claimed, was listed on section A of the form, where taxpayers are instructed to report "Donated Property of $5,000 or Less and Certain Publicly Traded Securities." On the line calling for a "[d]escription of donated property," the words "SEE ATTACHED" appeared. But no such attachment was included in the return. Section B of the form was left entirely blank; petitioner thus supplied no information as to the acquisition date or manner of acquisition, and he failed to supply a summary of the sculpture's physical condition. The signature lines, where the appraiser and an MIA officer were supposed to affix their signatures, were left blank. And petitioner did not attach to his return an appraisal of the artwork as required by section 170(f)(11)(D) for gifts valued in excess of $500,000.

[*5] There was conflicting testimony at trial about whether the Wasserman firm sent the 2011 return to petitioner for execution and filing or whether he visited the firm to sign it there. Petitioner testified that he visited the firm and reviewed the return with Mr. Kassel. During that review he allegedly noted, and questioned Mr. Kassel about, the incomplete Form 8283 and the absence of an appraisal. According to petitioner, Mr. Kassel advised that there was no need to include a complete Form 8283 or appraisal with the return because "the IRS already had it—or has it," referring to the documents included with the June 2012 submission to the AAS unit. Mr. Kassel, who testified at trial, did not corroborate petitioner's testimony.

The IRS selected petitioner's 2011 return for examination. During the examination an IRS staff appraiser determined that the FMV of the Dogon sculpture was $250,000. The IRS issued petitioner a timely notice of deficiency, asserting as its primary position that no deduction was allowable because petitioner failed to satisfy the statutory and regulatory substantiation requirements for this gift. The notice asserted as its secondary position that the allowable charitable contribution deduction should be reduced to $250,000. Calculating the tax on the basis of this secondary position, the notice determined a deficiency of $95,081 and an accuracy-related penalty of $19,016. (The notice did not determine a deficiency or penalty on the basis of the IRS's primary position.) Respondent has conceded the accuracy-related penalty for inability to show timely supervisory approval. *See* § 6751(b)(1).

D.    *Tax Court Proceedings*

Petitioner timely petitioned this Court. On January 17, 2020, respondent filed, and on February 11, 2020, we granted, a Motion for Leave to File First Amendment to Answer. In his amended Answer respondent asserts an increased deficiency, contending that the charitable contribution deduction should be denied in its entirety because petitioner failed to satisfy the substantiation requirements of section 170(f)(11) and Treasury Regulation § 1.170A-13.

On January 21, 2020, respondent filed a Motion for Partial Summary Judgment seeking a ruling that petitioner failed to satisfy these substantiation requirements. By Order served June 15, 2021, we granted that Motion in part, finding that petitioner: (1) failed to obtain a timely "qualified appraisal" of the Dogon sculpture, as required by Treasury Regulation § 1.170A-13(c)(3), (2) failed to attach to his 2011 return an appraisal of any kind, as required by section 170(f)(11)(D) for

[*6] gifts valued in excess of $500,000, and (3) failed to attach to his return a fully completed Form 8283, as required by section 170(f)(11)(C) and Treasury Regulation § 1.170A-13(c)(2)(i)(B). Each of these failures is independently sufficient to warrant disallowance of the deduction. *See* § 170(f)(11)(A)(i). But we noted that petitioner might be allowed a deduction despite these shortcomings if his failure to meet the substantiation requirements was due to "reasonable cause and not to willful neglect." *See* § 170(f)(11)(A)(ii)(II). We denied summary judgment on this latter question and reserved it for trial, which we held on April 12, 2022.

## OPINION

The IRS's determinations in a notice of deficiency are generally presumed correct. *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The taxpayer bears the burden of proving entitlement to any deductions claimed and of substantiating their amounts. Rule 142(a); *Hradesky v. Commissioner*, 65 T.C. 87, 90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). However, the burden of proof shifts to the Commissioner with respect to any "new matter" or "increase[] in deficiency." Rule 142(a); *see Turner v. Commissioner*, 68 T.C. 48, 50 (1977). Respondent thus bears the burden of proof to the extent he seeks an increased deficiency as asserted in his amended answer.

A.      *Underlying Principles*

Section 170(a)(1) allows as a deduction any charitable contribution made within the taxable year. If the taxpayer donates property other than money, the amount of the contribution is generally equal to the FMV of the property at the time of the gift. *See* Treas. Reg. § 1.170A-1(c)(1). Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must "obtain[] a qualified appraisal of such property." § 170(f)(11)(C). A qualified appraisal must be secured no later than the due date of the return, including extensions. Treas. Reg. § 1.170A-13(c)(3)(i)(A), (iv)(B).

A taxpayer claiming a noncash contribution valued in excess of $5,000 must "attach[] to the return . . . such information regarding such property and such appraisal as the Secretary may require." § 170(f)(11)(C). The required information includes an appraisal summary (i.e., Form 8283) that must be included with "the return on which such deduction is first claimed for such contribution." Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 155(a)(1)(B), 98 Stat. 494, 691; *see Costello v. Commissioner*, T.C. Memo. 2015-87, 109 T.C.M. (CCH) 1441,

[*7] 1445; *Jorgenson v. Commissioner*, T.C. Memo. 2000-38, 79 T.C.M. (CCH) 1444, 1450 (noting that the IRS has prescribed Form 8283 to be used as the "appraisal summary"); Treas. Reg. § 1.170A-13(c)(2). Where a contribution of property is valued in excess of $500,000, the taxpayer must both obtain and attach to his return "a qualified appraisal of such property." § 170(f)(11)(D). Failure to comply with these requirements generally precludes a deduction. *See* § 170(a)(1) ("A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary."), § 170(f)(11)(A)(i) (providing that "no deduction shall be allowed" unless specified substantiation requirements are met).

B.   *"Reasonable Cause" Exception*

We ruled on summary judgment that petitioner had failed to satisfy these substantiation requirements because he did not attach to his 2011 return either a fully completed Form 8283 or an appraisal of any kind. Petitioner seeks to avoid disallowance of his deduction by relying on section 170(f)(11)(A)(ii)(II), which provides that a deduction may be allowed despite such a failure "if it is shown that the failure . . . is due to reasonable cause and not to willful neglect." *See Oakhill Woods, LLC v. Commissioner*, T.C. Memo. 2020-24, 119 T.C.M. (CCH) 1144, 1150–51. We have construed section 170(f)(11)(A)(ii)(II) similarly to other Code sections that provide for "reasonable cause" defenses. *See ibid.*; *Presley v. Commissioner*, T.C. Memo. 2018-171, 116 T.C.M. (CCH) 387, 402, *aff'd*, 790 F. App'x 914 (10th Cir. 2019); *Crimi v. Commissioner*, T.C. Memo. 2013-51, 105 T.C.M. (CCH) 1330, 1353.

"Reasonable cause" requires a taxpayer to exercise ordinary business care and prudence. *See, e.g.*, *United States v. Boyle,* 469 U.S. 241, 246 (1985); *Presley*, 116 T.C.M. (CCH) at 402. Whether a taxpayer had reasonable cause is a fact-intensive inquiry that requires examination of all the facts and circumstances. *Presley*, 116 T.C.M. (CCH) at 402; *Crimi*, 105 T.C.M. (CCH) at 1353. If a taxpayer alleges reliance on the advice of an accountant, return preparer, or other tax professional, the taxpayer must show that he "actually relied in good faith on the professional's advice." *Crimi*, 105 T.C.M. (CCH) at 1353; *see Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98–99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002); Treas. Reg. § 1.6664-4(c)(1) (requiring that the taxpayer must have "reasonably relied in good faith on [the] advice").

Petitioner contends that he received, and reasonably relied upon, advice from Mr. Kassel that it was unnecessary to include either a

[*8] qualified appraisal or a fully completed Form 8283 with his 2011 return. We find no factual support for that contention. There is no credible evidence that Mr. Kassel gave petitioner any such advice. And if Mr. Kassel did offer such advice, petitioner could not have reasonably relied in good faith upon it.[2]

1. *Professional Advice*

In determining whether petitioner relied in good faith on professional advice, we must first determine whether he actually received such advice. *See Neonatology*, 115 T.C. at 99. We have defined advice as "any communication, including the opinion of a professional tax adviser, setting forth [an] analysis or conclusion . . . provided to (or for the benefit of) the taxpayer." *Pankratz v. Commissioner*, T.C. Memo. 2021-26, 121 T.C.M. (CCH) 1178, 1185 (quoting Treasury Regulation § 1.6664-4(c)(2)). We look to see whether the taxpayer relied on the adviser's *judgment*. *See Woodsum v. Commissioner*, 136 T.C. 585, 593 (2011). A professional who simply prepares a return by inputting data without exercising judgment is not considered to render "advice" that justifies reasonable reliance. *See Parker v. Commissioner*, T.C. Memo. 2012-357, 104 T.C.M. (CCH) 823, 828.

We first must determine whether Mr. Kassel provided advice to petitioner. Petitioner testified that he went to Mr. Kassel's office,[3] reviewed the return before signing it, and questioned Mr. Kassel about the absence of an appraisal and of a properly completed Form 8283. According to petitioner, Mr. Kassel advised him that these deficiencies were immaterial "because the IRS already had" these items, referring to the documents included in the June 2012 submission to the AAS unit.

Apart from petitioner's testimony, the record contains no evidence that he received professional advice directed to the statutory and the regulatory reporting requirements. He supplied no evidence of any written advice from Mr. Kassel or the Wasserman firm. Our resolution of

---

[2] Although Mr. Wasserman signed the 2011 return as the "preparer," he did not testify at trial. Petitioner does not contend, and the record contains no evidence, that Mr. Wasserman provided petitioner any affirmative advice regarding the matters at issue here.

[3] There was conflicting testimony about whether the Wasserman firm sent the 2011 return to petitioner for execution and filing or whether petitioner went to the firm's office. Petitioner testified that he did the latter, and we will assume arguendo that he did.

[*9] this first question thus depends on the credibility of petitioner's testimony.

As the trier of fact, we observe a witness's candor, sincerity, and demeanor in order to evaluate the testimony and assign it appropriate weight in determining disputed facts. *Neonatology*, 115 T.C. at 84. We are not bound to accept a taxpayer's self-serving and unverified assertions. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986); *Hradesky*, 65 T.C. at 90. We find that petitioner's testimony was unverified, self-serving, and unreliable.

In this case Mr. Kassel was available to testify, and did testify, at trial. But he did not corroborate, in any respect, petitioner's testimony about the alleged advice. And petitioner's counsel asked no questions of Mr. Kassel squarely directed to this point. The fact that petitioner did not seek corroborative testimony from the person who might have supplied it weighs against him. *See Blum v. Commissioner*, 59 T.C. 436, 440–41 (1972); *see also Verra v. Commissioner*, T.C. Memo. 1972-199, 31 T.C.M. (CCH) 996, 998–99, *aff'd without published opinion*, 474 F.2d 1336 (2d Cir. 1973).

Mr. Kassel could not recall the exact circumstances surrounding preparation of petitioner's 2011 return—not surprisingly, since those events occurred 11 years previously. But Mr. Kassel did testify that he would not have filed a tax return if he saw that it contained an incomplete Form 8283. On the basis of that testimony, we find it implausible that Mr. Kassel would have advised petitioner to do the opposite. We find it equally implausible that Mr. Kassel, having written "SEE ATTACHMENT" on a tax return, would have advised petitioner that it was appropriate to file a return lacking an attachment. And if petitioner had (as he testified) brought the defective Form 8283 to Mr. Kassel's attention, we find it implausible that Mr. Kassel, an experienced return preparer, would not have retrieved from his files the substantially complete Form 8283 that he had previously submitted to the AAS unit.

Under these circumstances, we are not required to accept petitioner's self-serving testimony. *See Tokarski*, 87 T.C. at 77. There is no credible evidence that Mr. Kassel affirmatively advised petitioner to file a tax return that was defective on its face. The premise for petitioner's reliance-on-professional-advice defense—that he received advice justifying reliance—thus collapses.

[*10] 2.     *Actual Reliance in Good Faith*

Assuming arguendo that Mr. Kassel told petitioner that he need not include either a fully completed Form 8283 or a qualified appraisal with his 2011 return, we find no credible evidence that petitioner actually relied on such advice in good faith.  A taxpayer who advances a reliance-on-professional-advice defense must establish that his "reliance was reasonable."  *See Atkinson v. Commissioner*, T.C. Memo. 2015-236, 110 T.C.M. (CCH) 550, 563 (quoting *Freytag v. Commissioner*, 89 T.C. 849, 888 (1987), *aff'd on another issue*, 904 F.2d 1011 (5th Cir. 1990), *aff'd*, 501 U.S. 868 (1991)); Treas. Reg. § 1.6664-4(b)(1).

"Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Treas. Reg. § 1.6664-4(b)(1).  Petitioner is a highly educated and sophisticated individual, with a law degree and five years of doctoral study.  Beginning in 2007, his position at Sotheby's enabled him to gain considerable experience in matters involving art appraisal at the highest levels.  He may lack formal training in U.S. tax law, but we find that he possesses a sharp and sophisticated mind for business and dealings in fine art.

Of particular relevance to this case, petitioner was clearly familiar with Form 8283 and the section 170(f)(11) reporting requirements.  He had made at least three prior tax-deductible contributions of African art, including a work valued at $60,000 in 2007, a work valued at $100,000 in 2009, and a work valued at $5,000 in 2010.  He was required to secure qualified appraisals for these donations, and he was required to include (and presumably did include) a fully completed Form 8283 with each return.  This was not ancient history but immediately preceded his 2011 gift.

Petitioner testified that he himself secured the signatures of Mr. Oliver and the MIA officer on the Form 8283 for the Dogon sculpture that was submitted to the AAS unit in June 2012.  Mr. Kassel had no contact with either of these parties.  This further establishes that petitioner was personally familiar with Form 8283 and its requirements.

We have consistently held that blind reliance on a return preparer is not a defense.  Rather, the taxpayer must personally review the return and satisfy himself that it is accurate before signing and filing it.  *See, e.g.*, *Metra Chem Corp. v. Commissioner*, 88 T.C. 654 (1987);

[*11] *Bronson v. Commissioner*, T.C. Memo. 2002-260, 84 T.C.M. (CCH) 447; *Osborne v. Commissioner*, T.C. Memo. 2002-11, 83 T.C.M. (CCH) 1083; *Bilzerian v. Commissioner,* T.C. Memo. 2001-187, 82 T.C.M. (CCH) 295.

Petitioner knew that his 2011 return had to include a properly completed Form 8283, duly signed by the appraiser and an MIA officer, and that a qualified appraisal needed to be attached to the return. Armed with this knowledge, petitioner could not have reasonably relied on contrary advice from Mr. Kassel. Such reliance would exemplify "willful blindness." *Cf. Jarnagin v. United States*, 134 Fed. Cl. 368, 378 (2017) (rejecting taxpayers' reasonable cause defense because failing to read or pay attention to certain lines on their tax returns "constitute[d] willful blindness to the . . . requirement[s]" (quoting *United States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012))).

Even if petitioner had not already been familiar with Form 8283 and its requirements, the defects were there in plain view. The Dogon sculpture was listed (incongruously) in section A of the form, where taxpayers are instructed to report donated property worth less than $5,000 and "certain publicly traded securities." On the line calling for a "[d]escription of donated property," the words "SEE ATTACHED" appeared, but there was no attachment. Section B of the form, where the gift should have been reported, was left blank, including two gaping blanks for signatures. Form 8283 explicitly says that "[a]n appraisal is generally required for property listed in Section B," but there was no appraisal.

One does not need to be a tax expert to open his eyes and read plain English. If petitioner had reviewed the Form 8283 as he testified, it would have been obvious to him that it was defective in many respects. We find it wholly implausible that a taxpayer as educated as petitioner, having devoted almost a decade to the study of law, would have acquiesced in the notion that he could properly file a tax return obviously lacking these required elements.

Taxpayers have a duty to review their returns before signing and filing them, and the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. *Metra Chem*, 88 T.C. at 662; *Magill v. Commissioner*, 70 T.C. 465, 479–80 (1978), *aff'd*, 651 F.2d 1233 (6th Cir. 1981). We find it most likely that petitioner did not review his 2011 return with any care at all. And if he did review it, he could not have reasonably relied on advice from Mr. Kassel that the

**[\*12]** return's blatant errors and omissions were immaterial. *See Chiarelli v. Commissioner*, T.C. Memo. 2021-27, 121 T.C.M. (CCH) 1188, 1193 (citing *Metra Chem*, 88 T.C. at 662).

To reflect the foregoing,

*Decision will be entered under Rule 155.*